IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FELICIA HOLLINS, | |
| Plaintiff, | |
| v. | Civil Action No. 1:24-cv-07664 |
| EXPERIAN INFORMATION SOLUTIONS, INC., | Honorable Andrea R. Wood |
| Defendants. | |

**DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC.'S
MEMORANDUM OF LAW IN SUPPORT OF ITS
<u>MOTION TO DISMISS THE COMPLAINT</u>**

Plaintiff Felicia Hollins' ("Plaintiff") Complaint suffers from a fatal flaw. Plaintiff is one of the hundreds of thousands of consumers who file bankruptcy each year. In January 2020, Plaintiff filed a Chapter 13 bankruptcy, scheduling more than 29 claims. Two years later, Plaintiff converted that bankruptcy to a Chapter 7 bankruptcy, amending her schedules to list 34 claims. Now, she alleges that Experian violated the Fair Credit Reporting Act ("FCRA") by failing to report two accounts—opened after Plaintiff's Chapter 13 bankruptcy was filed, but before it was converted Chapter 7 bankruptcy—as discharged in bankruptcy. But it has long been the law in this Circuit and others that a consumer reporting agency ("CRA") like Experian does not violate the FCRA by reporting information received from financial institutions, even if that information is incorrect, without actual notice of a problem with the reporting. It is also the law in this Circuit, and increasingly throughout the country, that 15 U.S.C. § 1681e(b), the FCRA's reasonable procedures provision and sole provision at issue here, does not require Experian to wade into individual bankruptcies and accurately determine which debts are discharged under United States bankruptcy law. This is especially true in cases like this one where a consumer has not alleged any

use of the FCRA's primary mechanism for correcting inaccurate information: the dispute and reinvestigation provisions of § 1681i.

Plaintiff does not allege that Experian had actual notice its reporting of the two accounts at issue in this case was incorrect. And she cannot plausibly allege that Experian had a duty to determine whether these two post-petition, pre-conversion debts were discharged. Her claims fail as a result and should be dismissed.

## BACKGROUND

**I.  THE FAIR CREDIT REPORTING ACT.**

The FCRA seeks "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). The FCRA expressly allows CRAs to report consumer bankruptcy information, so long as the chapter is correctly noted. 15 U.S.C. § 1681c(a)(1). The FCRA likewise allows the reporting of derogatory accounts, including reporting charged-off accounts, so long as derogatory information that is more than seven years old is excluded. *Id.* § 1681c(a)(4)-(5).

"The FCRA is not a strict liability statute" requiring perfect reporting of consumer information. *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 971 (7th Cir. 2004). Instead, § 1681e(b) requires CRAs to maintain "reasonable procedures to assure maximum possible accuracy" in preparing credit reports to third parties (called "consumer reports"), 15 U.S.C. § 1681e(b), and to reasonably "reinvestigate" consumer disputes about the accuracy of credit data. *Id*. at § 1681i(a).

The dispute and reinvestigation requirements of § 1681i are central to the structure Congress created in the FCRA:

> The Committee is aware that the consumer reporting system handles almost two billion pieces of data per month and will never be perfectly accurate. Mistakes will occur, and not all of them can be prevented. Section [1681i] is the heart of the Committee's efforts to ensure the ultimate accuracy of consumer reports by placing important requirements upon consumer reporting agencies after inaccuracies have

> been detected. Therefore, section [1681i] is designed to ensure that consumers are able to address problems and correct errors in a timely fashion.

S. REP. NO. 104-185, at 43 (1995) (*available at* https://www.congress.gov/congressional-report/104th-congress/senate-report/185/1?outputFormat=pdf).

The Seventh Circuit has long recognized the important role of the consumer and the consumer dispute provisions of § 1681i in effectuating the goals of the FCRA:

> Requiring credit reporting agencies to look beyond the face of every court document to find the rare case when a document incorrectly reports the result of the underlying action would be unduly burdensome and inefficient. ***The consumer is in a better position than the credit reporting agency to detect errors*** appearing in court documents dealing with the consumer's own prior litigation history. ***Once the information is erroneously reported on the consumer's credit report, the consumer will be alerted to the error and can then seek correction of the error by notifying the credit reporting agency or the court itself* . . . .** *A credit reporting agency that has been notified of potentially inaccurate information in a consumer's credit report is in a very different position than one who has no such notice.*

*Henson v. CSC Credit Servs.,* 29 F.3d 280, 285–87 (7th Cir. 1994) (emphasis added) (affirming dismissal of claims under § 1681e(b), but remanding claims under § 1681i).

**II.     FACTUAL ALLEGATIONS.**

On January 8, 2020, Plaintiff filed a voluntary petition for Chapter 13 bankruptcy in the U.S. Bankruptcy Court for the Northern District of Illinois. Compl. ¶ 37; Exhibit A, Plaintiff's Chapter 13 Bankruptcy Petition. While Plaintiff's bankruptcy proceeding was ongoing, Defendant opened two accounts, the first with LendingClub in October 2021 and the second with Upgrade, Inc. ("Upgrade") in December 2021 (collectively, "the Post-Petition Accounts"). Compl. ¶¶ 47, 49. Because they were incurred post-petition, these accounts were not listed on Plaintiff's Chapter 13 bankruptcy schedules from her initial petition. *See* Exhibit A.

On February 9, 2022, over two years after Plaintiff's initial filing, Plaintiff decided to convert to a Chapter 7 bankruptcy after her trustee had filed a motion to terminate the bankruptcy

3

for failure to make plan payments. Plaintiff amended her bankruptcy schedules to include the Post-Petition Accounts, but did not include the account numbers or the dates the debts were incurred. Exhibit B, Plaintiff's Amended Schedule E/F, at 7, 10. Over the course of the proceedings, Plaintiff also had at least three separate trustees. *See* Discharge of Trustee at 1, *In re Felicia Hollins*, No. 1:20-bk-00594 (Bankr. N.D. Ill. Jan 08, 2020), ECF No. 48 (discharging Trustee Glenn Stearns); Letter of Resignation and Appointment at 1, *In re Felicia Hollins*, 1:20-bk-00594 (Bankr. N.D. Ill. Jan 08, 2020), ECF No. 40 (resignation of Trustee Joji Takada and appointment of Trustee Zane Zielinski). On May 17, 2022, the court issued an order of discharge, summarily holding "[a] discharge under 11 U.S.C. § 727 is granted to: Felicia R Hollins" but advising in an attached page that "[s]ome debts are not discharged," such as, for example, improperly listed debts and debts subject to reaffirmation agreements. Exhibit C, Plaintiff's May 17, 2022 Order of Discharge, at 1-2; Compl. ¶ 39. The discharge order also warned the reader:

> This information is only a general summary of the bankruptcy discharge; some exceptions exist. Because the law is complicated, you should consult an attorney to determine the exact effect of the discharge in this case.

Exhibit C at 2.

At some unspecified time, Plaintiff learned that Experian was listing the Post-Petition Accounts as "CHARGE OFF" on her consumer report. Plaintiff does not allege that this information is incorrect, that she paid off the debts, or that LendingClub or Upgrade did not charge

4

off the debts.[1] Instead Plaintiff alleges this information is wrong because her obligation to repay the debts was discharged in her bankruptcy. *See* Compl. ¶¶ 40, 45-50. Plaintiff does not allege that she contacted Experian to dispute this information prior to filing this case.

Plaintiff alleges that Experian negligently and willfully violated 15 U.S.C. § 1681e(b), which requires that consumer reporting agencies follow "reasonable procedures to assure maximum possible accuracy" of the information it reports.

## **LEGAL STANDARD**

Fed. R. Civ. P. 12(b)(6) allows a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege enough facts "to state a claim [for] relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility exists when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also E.E.O.C. v. Concentra Health Servs., Inc.,* 496 F.3d 773, 776 (7th Cir. 2007) ("allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff pleads itself out of court.") (quoting *Twombly*, 550 U.S. at 555). Although Fed. R. Civ. P. 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic

---

[1] It is nearly certain that LendingClub and Upgrade did, in fact, charge off the accounts, as the United States Comptroller of Currency requires financial institutions to do so when an account goes more than 180 days past due. *See* David D. Gibbons, *Uniform Retail Credit Classification and Account Management Policy: Policy Implementation*, OCC.Treas.Gov, Jun. 20, 2000 (*available at* https://www.occ.treas.gov/news-issuances/bulletins/2000/bulletin-2000-20.html).

5

recitation of the elements of a cause of action will not do.'" *Id*. (quoting *Twombly*, 550 U.S. at 555).

## ARGUMENT

At bottom, Plaintiff's claim is nothing more than an attempt to impose strict liability on Experian. The structure of the FCRA and a wealth of controlling and persuasive case law all teach the same lesson: the reasonable procedures requirement of § 1681e(b) does not require Experian to accurately determine the effects of a consumer's bankruptcy on individual debts. Once Plaintiff learned of an error in her credit report, her next step was to contact Experian and ask Experian to reinvestigate and correct the error, not resort to federal litigation on a theory that necessarily fails. Plaintiff's claims fail and should be dismissed.

**I.     THE FCRA DOES NOT REQUIRE EXPERIAN TO SIFT THROUGH PLAINTIFF'S BANKRUPTCY DOCKETS AND DETERMINE WHICH DEBTS ARE DISCHARGED.**

To state a claim under § 1681e(b), Plaintiff must allege "(1) that there was inaccurate information in her consumer credit report, (2) that the inaccuracy was due to [the CRA's] failure to follow reasonable procedures to assure maximum possible accuracy, (3) that she suffered actual damages and (4) that those damages were caused by inclusion of the inaccurate entry." *Benson v. Trans Union, LLC*, 387 F. Supp. 2d 834, 840 (N.D. Ill. 2005); *see also Hupfauer v. Citibank, N.A.*, 2016 WL 4506798 at *3 (N.D. Ill. Aug. 19, 2016) (finding same). Plaintiff alleges that Experian's reporting of the Post-Petition Accounts was inaccurate following her Chapter 7 bankruptcy discharge. But to proceed, Plaintiff must plausibly allege that this inaccurate information was included in a consumer report because of Experian's failure to follow reasonable procedures. Plaintiff does not do so.

6

The Seventh Circuit has clearly established the parameters of § 1681e(b). In *Henson*, the Court held that reliance on public court dockets was reasonable as a matter of law until a consumer notified the CRA of a problem. *Henson*'s reasoning has particular application here:

> A contrary rule of law would require credit reporting agencies to go beyond the face of numerous court records to determine whether they correctly report the outcome of the underlying action. Such a rule would also require credit reporting agencies to engage in background research which would substantially increase the cost of their services. In turn, they would be forced to pass on the increased costs to their customers and ultimately to the individual consumer.

*Henson*, 29 F.3d at 285.

In *Sarver*, a case also involving the impact of a consumer's bankruptcy on individual debts, the Seventh Circuit extended this reasoning to financial institutions like LendingClub and Upgrade:

> One can easily see how, even with safeguards in place, mistakes can happen. But given the complexity of the system and the volume of information involved, a mistake does not render the procedures unreasonable. In his attempt to show that Experian's procedures are unreasonable, Sarver argues that someone should have noticed that only the Cross Country accounts were shown to have been involved in bankruptcy. That anomaly should have alerted Experian, Sarver says, to the fact that the report was inaccurate. What Sarver is asking, then, is that each computer-generated report be examined for anomalous information and, if it is found, an investigation be launched. In the absence of notice of prevalent unreliable information from a reporting lender, which would put Experian on notice that problems exist, we cannot find that such a requirement to investigate would be reasonable given the enormous volume of information Experian processes daily.
>
> We found in *Henson* that a consumer reporting agency was not liable, as a matter of law, for reporting information from a judgment docket unless there was prior notice from the consumer that the information might be inaccurate . . . The same could be said for records from financial institutions.

*Sarver v. Experian Info. Sols.*, 390 F.3d 969, 972–73 (7th Cir. 2004).

In *Childress v. Experian Info. Sols., Inc.*, the Seventh Circuit applied similar reasoning to the question of whether § 1681e(b) requires CRAs to determine whether a bankruptcy withdrawal is voluntary or involuntary:

7

> What the plaintiff wants would thus require a live human being, with at least a little legal training, to review every bankruptcy dismissal and classify it as either voluntary or involuntary. That's a lot to ask—too much when one considers the alternative, which is for the agency to act only upon receiving information from the bankruptcy petitioner indicating that the petition has indeed been voluntarily dismissed . . . We noted at the outset of this opinion that the Fair Credit Reporting Act requires only that the procedures adopted by credit-reporting agencies be "reasonable" in relation to the goal of accurate credit reporting. The procedure urged by the plaintiff is not "reasonable." It would put an enormous burden on the consumer credit-reporting agencies. Or so it seems; it was the plaintiff's burden to establish the reasonableness of her proposed procedure.

*Childress v. Experian Info. Sols., Inc.*, 790 F.3d 745, 747 (7th Cir. 2015)

*Henson*, *Sarver*, and *Childress* all lead to the same conclusion. The reasonable procedures requirements of § 1681e(b) do not require perfect reporting, and certainly not with respect to the many exceptions and vagaries that can arise in an individual consumer's bankruptcy that concludes only with a general discharge order that expressly informs the reader that it is only a summary and instructs the debtor to obtain legal counsel to ascertain the exact effects on a specific debt. *See*, *e.g.*, *Hupfauer*, 2016 WL 4506798 at *7 (citing *Childress*, 790 F.3d at 747) ("[R]equiring a third party such as a credit bureau to determine whether a specific account was discharged in a particular consumer's Chapter 13 bankruptcy would impose an unfairly heavy burden on that party."). And these cases are not outliers, as numerous other Circuit courts have adopted similar principles. *E.g.*, *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) ("[W]hen one goes from the § 1681e(b) investigation to the § 1681i(a) *re* investigation, the likelihood that the cost-benefit analysis will shift in favor of the consumer increases markedly. Judgment as a matter of law, even if appropriate on a § 1681e(b) claim, thus may not be warranted on a § 1681i(a) claim."); *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 945 (11th Cir. 2021) (adopting *Cushman*, *Henson*, and *Sarver* and affirming dismissal of "claims under § 1681e alleges that Experian acted unreasonably

in preparing any credit reports before he informed it of the relevant inaccuracy" where consumer alleged debt was discharged in bankruptcy).

Perhaps most notably, the Eight Circuit recently addressed nearly identical claims in *Rydholm v. Equifax Info. Servs. LLC*, 44 F.4th 1105, 1109 (8th Cir. 2022). In *Rydhom*, the consumer had obtained a Chapter 7 bankruptcy, but sued the CRAs under § 1681e(b) for failing to report the effects of that discharge perfectly. The Eight Circuit rejected plaintiff's claims, explaining:

> Though both CRAs had notice of Rydholm's general discharge, that fact alone is insufficient to trigger a duty to investigate. The bankruptcy code provides numerous exceptions to discharge and even authorizes a debtor to reaffirm certain obligations afterwards. Absent notice that the discharge specifically included the *1765 account, neither CRA had information contrary to what Wells Fargo reported to them.
>
> The practical effect of finding a § 1681e(b) violation here would be to require CRAs to wade into individual bankruptcy dockets to discern whether a debt survived discharge. Consumers file hundreds of thousands of Chapter 7 bankruptcy petitions every year. We join our sister circuits in rejecting the invitation to mandate that CRAs hire individuals with legal training to preemptively determine the validity of reported debts. Simply put, "the cost of verifying the accuracy of the source" outweighs "the possible harm inaccurately reported information may cause" a consumer. The FCRA requires reasonable—not perfect—procedures.

*Rydholm,* 44 F.4th at 1109 (quoting *Henson*, 29 F.3d at 287) (citing *Childress*, 790 F.3d at 747; *Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232, 1241 (10th Cir. 2015)) (other citations omitted).

The reasoning undergirding these cases is even stronger when applied here. Plaintiff was just one of hundreds of thousands of consumers who filed bankruptcy in 2020. *See Table F-2: U.S. Bankruptcy Courts—Business and Nonbusiness Cases Commenced, by Chapter of the Bankruptcy Code, During the 12-Month Period Ending December 31, 2020*, USCourts.gov, https://www.uscourts.gov/sites/default/files/bf_f2_1231.2020.pdf (showing 378,953 Chapter 7 bankruptcies and 156,377 Chapter 13 bankruptcies filed in 2020). Plaintiff initially scheduled 29

9

claims, nine of which listed no account numbers or opening dates that would let a third-party know which account was at issue. Exhibit A at 22-32. Plaintiff also claimed some accounts as exempt. Exhibit A at 20-21. Plaintiff's bankruptcy proceeding was nearly two-and-a-half years long; had 58 docket entries; was converted from a Chapter 13 bankruptcy to a Chapter 7 bankruptcy over two years along; did not list the specific account numbers or opening dates of the allegedly discharged Post-Petition Accounts in the bankruptcy schedules; switched trustees three separate times during the proceedings; and concerns post-petition, rather than pre-petition, debts.[2]

Even then, the discharge of post-petition debts are subject to more stringent rules than pre-petition debts, some of which even vary between district and involve information not available in the public record. *See, e.g., In re Nephew,* 290 B.R. 202, 208-09 (Bankr. W.D.N.Y. 2003) (finding that, based on combined interpretation of court's local rules and bankruptcy code, the failure to adequately schedule post-Chapter 13 petition, pre-Chapter 7 conversion debts rendered them not discharged); *Higgins v. Logan*, 635 B.R. 776, 779-80 (E.D.N.C. 2021) (noting split in bankruptcy courts regarding court approval requirement for post-petition debts and that "[s]ection 1328(d) prohibits a debtor from discharging a claim for post-petition consumer debt 'if prior approval by the trustee of the debtor's incurring such debt was practicable and was not obtained.'"). And, when Plaintiff's complicated bankruptcy was finished, it concluded only in a summary discharge order that expressly disavows that it tells the reader which debts are discharged, leaving that task to additional legal counsel.[3]

---

[2] Indeed, Plaintiff's own discharge order notes that "[s]ome debts are not discharged," including, for example, such debts the court has otherwise decided are not discharged, improperly listed debts, and reaffirmed debts. Exhibit C at 2.

[3] Judge Coleman's recent decision in *Laura v. Experian Info. Sols., Inc.*, 2023 WL 2646818, at *2 (N.D. Ill. Mar. 27, 2023) illustrates the impracticability of determining the effect of a discharge even in a comparatively simple no-asset Chapter 7 bankruptcy. The consumer in

10

Plaintiff's allegations require Experian to monitor consumer bankruptcies and perfectly determine their effects. As the Seventh Circuit explained in *Childress*, "[t]hat's a lot to ask—too much when one considers the alternative, which is for the agency to act only upon receiving information from the [consumer]." *Childress,* 790 F.3d at 747. Plaintiff was "in a better position" than Experian to identify any errors in Plaintiff's report. *Ruffin-Thompkins*, 422 F.3d at 608. Once Plaintiff identified the errors she complains of in this case, her next call should have been to Experian, notifying Experian of the problem and requiring Experian to reinvestigate. That is the mechanism Congress created, not rushing to the courthouse at the first sign of an issue.

## **CONCLUSION**

For all of the foregoing reasons, Plaintiff has failed to state a claim and Plaintiff's Complaint should be dismissed with prejudice.

---

*Laura* alleged that Experian inaccurately reported a discharged debt as due and owing. *Id.* at *2. But the consumer had failed to include the debt on her bankruptcy schedules, which the Seventh Circuit requires as a precondition to discharging a debt. *Id.* The court in Laura therefore concluded that the consumer's debt was not discharged and therefore Experian's reporting was accurate. In doing so, the court was forced to consider documents buried in the bankruptcy docket and resolve unsettled questions of bankruptcy law and court-created equitable rules. *Id.* at *2-3.

Dated: September 19, 2024          Respectfully submitted,

         */s/ Oren R. Depp*
         JONES DAY
         Oren R. Depp, Bar No. 6345841
         odepp@jonesday.com
         110 North Wacker Drive, Suite 4800
         Chicago, IL 60606
         Telephone: +1.312.269.4208

         *Counsel for Experian Information Solutions, Inc.*

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that on September 19, 2024, the foregoing Memorandum of Law in Support of Experian's Motion to Dismiss Plaintiff's Complaint was filed using the CM/ECF system, which will send notice to all parties of record.

*/s/ Oren R. Depp*
*Counsel for Defendant Experian Information Solutions, Inc.*

.