# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **FELICIA HOLLINS,** | Case No.: 1:24-cv-07664 |
| Plaintiff, | ================================ |
| v. | **ORAL ARGUMENT REQUESTED** |
| **EXPERIAN INFORMATION SOLUTIONS, INC.,** | |
| Defendant. | |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT AND IN SUPPORT OF PLAINTIFF'S CROSS-MOTION TO AMEND HER COMPLAINT**

MARCUS ZELMAN, LLC

**Yitzchak Zelman, Esq. (YZ5857)
701 Cookman Avenue, Suite 300
Asbury Park, New Jersey 07712
Phone:      (732) 695-3282
Fax:          (732) 298-6256**
*Attorney for the Plaintiff*
*Felicia Hollins*

**TABLE OF CONTENTS**

**PRELIMINARY STATEMENT**..................................................................................................1

**ARGUMENT**............................................................................................................................4

    **A. Plaintiff's Cross-Motion to Amend Should Be Freely Granted, Thereby Mooting Defendant's Motion to Dismiss**…………………………………………..…..4

    **B. The First Amended Complaint Adequately Alleges A Violation Of Section 1681e(b) Of The FCRA**……………………………………………………………..6

**CONCLUSION**........................................................................................................................14

i

# **TABLE OF AUTHORITIES**

*Alsibai v. Experian Info. Sols., Inc.*,
> 488 F. Supp. 3d 840 (D. Minn. 2020)……………………………………………………9

*Barry Aviation v. Land O'Lakes Mun. Airport Comm'n*,
> 377 F.3d 682 (7th Cir. 2004)…………………………………………………………..5

*Benjamin v. Experian Info. Sols., Inc.*,
> 561 F. Supp. 3d 1330 (N.D. Ga. 2021)………………………………………………10

*Coleman v. Experian Info. Sols., Inc.*,
> 655 F. Supp. 3d 1285 (N.D. Ga. 2023)………………………………………………..3

*Collins v. Admin. Office of the Ky. Courts*,
> 2013 U.S. Dist. LEXIS 133336 (E.D. Ky. Sep. 18, 2013)…………………………………6

*Ferrin v. Experian Info. Sols., Inc.*,
> 617 F. Supp. 3d 998 (D. Minn. 2022)………………………………...……………..10, 14

*Gadomski v. Equifax Info. Servs., LLC*,
> 2020 U.S. Dist. LEXIS 119792 (E.D. Cal. July 6, 2020)…………………………………10

*Guimond v. Trans Union Credit Info. Co.*,
> 45 F.3d 1329 (9th Cir. 1995)………………………………………………………….7

*Henson v. CSC Credit Services*,
> 29 F.3d 280 (7th Cir. 1994)………………………………………………………….11

*Hernandez v. Experian Info. Sols., Inc.*,
> 2022 U.S. App. LEXIS 11997 (9th Cir. May 3, 2022)…………………………………..2, 3

*Jones v. Federated Fin. Reserve Corp.*,
> 144 F.3d 961 (6th Cir. 1998)…………………………………………………………….7

*Laura v. Experian Info. Sols., Inc.*,
> 2022 U.S. Dist. LEXIS 48445 (N.D. Ill. Mar. 18, 2022)…………………………..3, 12, 14

*Morris v. Experian Info. Sols., Inc.*,
> 478 F. Supp. 3d 765 (D. Minn. 2020)……………………………...……………..2, 9, 12, 13

*Rachman Bag Co. v. Liberty Mut. Ins. Co.*,
> 46 F.3d 230 (2d Cir. 1995)…………………………………………………………….4

*Safeco Ins. Co. of Am. v. Burr*,
> 551 U.S. 47 (2007)……………………………………………………………………...6

*Sarver v. Experian Info. Sols.*,

    390 F.3d 969 (7th Cir. 2004)…………………………………………………………...11

*Seamans v. Temple Univ.*,

    744 F.3d 853 (3d Cir. 2014)……………………………………………………………..7

*Steir v. Girl Scouts of the USA*,

    383 F.3d 7 (1st Cir. 2004)………………………………………………………………4

*Sunseri v. Experian Info. Sols., Inc.*,

    2022 U.S. App. LEXIS 12001, 2022 WL 1315303 (9th Cir. May 3, 2022)………………..3

*Toft v. Harbor Diversified, Inc.*,

    2024 U.S. Dist. LEXIS 126670 (E.D. Wis. July 18, 2024)…………………………………5


Statutes and Other Sources

15 U.S.C. § 1681(a)……………………………………………………………………..6

S.Rep. No. 108–166, 108th Cong., 1st Sess. 5–6 (2003)………………………………………..6

**PRELIMINARY STATEMENT**

This Memorandum of Law is submitted in opposition to the Defendant's Motion to Dismiss the Complaint, pursuant to FRCP 12(b)(6), and in support of Plaintiff's Cross-Motion to Amend the Complaint pursuant to FRCP 15. In the Plaintiff's Amended Complaint, the Plaintiff alleges that Experian lacks adequate policies and procedures to assure the maximum possible accuracy of the information it reports, when it continued to report that the Plaintiff owed thousands of dollars on debts that had been previously discharged in her Chapter 7 Bankruptcy. Experian's Motion to Dismiss the Amended Complaint fails for so many equally valid reasons that it is difficult to determine which ones should be listed first. Here are the four main reasons:

*First,* Experian's Motion is premised on mistaken facts and will shortly be mooted by the filing of the Plaintiff's Second Amended Complaint, leave for which should be freely granted under FRCP 15. In its Motion, Experian relies heavily on the fact that Experian was not alerted to the inaccurate reporting and that it is therefore in a different position than a credit reporting agency who was put on notice of the subject inaccuracy. But the Plaintiff *did* dispute the reporting of these accounts, in plain-English, via a letter mailed to Experian in June 2024 – receipt of which was confirmed when Experian *responded* to that dispute. Admittedly, those allegations are not found in Plaintiff's First Amended Complaint, so leave is sought with this Cross-Motion to file an amended complaint which includes those specific allegations.

*Second,* even if the Plaintiff's Cross-Motion to Amend is denied, Experian's Motion to Dismiss should still be denied, because the Amended Complaint sufficiently alleges that Experian was aware of Plaintiff's Chapter 7 Bankruptcy discharge and its effects on Plaintiff's debts, but nevertheless continued to inaccurately report that the Plaintiff owed balances on two of her discharged debts – but not on all of her *other* discharged debts. *See e.g., Hernandez v. Experian*

1

*Info. Sols., Inc.*, 2022 U.S. App. LEXIS 11997, at *2 (9th Cir. May 3, 2022)("Hernandez has stated a claim for a violation of § 1681e(b) by alleging facts tending to show that [Experian] prepared a report containing inaccurate information. The first amended complaint plausibly alleges that Experian was aware of Hernandez's bankruptcy discharge, that the account at issue was discharged, and that Experian inaccurately reported the discharged account on the report it prepared"). The Amended Complaint further specifically alleges that Experian knows the information they report about consumers' bankruptcies is often inconsistent with public records, furnished/reported information, and/or information contained in their own files, and that Experian has been on notice that its procedures are not working, including by the thousands of lawsuits filed against Experian over this exact issue. *See e.g.,* Docket 11, ¶23, 34, 36-37. While Experian can always try to challenge the Plaintiff's claims at summary judgment, Plaintiff's allegations plainly suffice to survive Experian's Rule 12 challenge at this early juncture in the case.

*Third,* while Experian argues that it is not in a position to determine whether such debts have been discharged in bankruptcy, many district courts have already specifically told Experian otherwise. Instead, over 15 years ago, Experian entered into a consent Judgment in federal court, specifically agreeing to apply the presumption of dischargeability to pre-petition Chapter 7 debts after becoming aware of the bankruptcy, indicating that it *is* capable of making such basic determinations when it is attempting to assure that its credit reporting is accurate[1]. For that reason, many courts, **including in this District** have rejected these exact arguments made by Experian.

---

[1] *See e.g., Morris v. Experian Info. Sols., Inc.*, 478 F. Supp. 3d 765, 768-69 (D. Minn. 2020)(summarizing the settlement reached by Experian in *White v. Experian Information Solutions, Inc.*, No. SA CV 05-1070 DOC (C.D. Cal. Aug. 19, 2008), as: "In that settlement, both Experian and Trans Union essentially agreed that, when they learn that a consumer has received a Chapter 7 bankruptcy discharge, they will assume that all of the consumer's unsecured debts were discharged in that bankruptcy and update the reporting of those debts accordingly, unless they are notified otherwise").

*See, Laura v. Experian Info. Sols., Inc.*, 2022 U.S. Dist. LEXIS 48445, at *7-8 (N.D. Ill. Mar. 18, 2022)(denying Experian's Motion for Summary Judgment and finding "the Court rejects Experian's argument that updating discharged accounts requires a legal determination that CRAs are not obligated to make….This is not a case where Experian need resolve complex legal issues. Experian can reasonably apply a Chapter 7 bankruptcy discharge order to a consumer's credit file, as evidenced by the comprehensive *White* Order"); *Coleman v. Experian Info. Sols., Inc.*, 655 F. Supp. 3d 1285, 1297 (N.D. Ga. 2023)("Experian also argued that whether the debt was discharged was a legal question that neither the courts nor the FCRA required Experian to determine").

*Third,* the inadequacy of Experian's procedures is further highlighted by the express allegations that only Experian – and not any of the other credit reporting agencies – was inaccurately reporting these accounts. That factor is often cited as a reason – including recently by the Ninth Circuit - to find that Experian's bankruptcy-related procedures may not be sufficient, given that the other credit reporting agencies had no issue in preventing the reporting of there debts that had been discharged in bankruptcy. *See e.g., Hernandez v. Experian Info. Sols., Inc.,* 2022 U.S. App. LEXIS 11997, 2022 WL 1315306, at *1 n.3 (9th Cir. May 3, 2022) (noting that Experian's compliance with § 1681e(b) was not obvious where Transunion and Equifax did not make the same reporting errors "though they were equally bound by *White*'s terms"); *Sunseri v. Experian Info. Sols., Inc.*, 2022 U.S. App. LEXIS 12001, 2022 WL 1315303, at *1 n.2 (9th Cir. May 3, 2022) (same).

For the reasons explained below, it is respectfully submitted that Experian's Motion to Dismiss should be denied, and Plaintiff's Motion to Amend should be granted.

3

# ARGUMENT

### A. Plaintiff's Cross-Motion to Amend Should Be Freely Granted, Thereby Mooting Defendant's Motion to Dismiss.

Plaintiff should be permitted to amend her Complaint at this early stage of the litigation. Federal Rule of Civil Procedure 15 provides that leave to amend a party's pleading "shall be freely granted when justice so requires." FRCP 15(a)(2). "The default rule mandates that leave to amend is to be freely given when justice so requires, unless the amendment would be futile, or reward, inter alia, undue or intended delay." *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004). "Refusal to grant leave without justification is inconsistent with the spirit of the Federal Rules." *Rachman Bag Co. v. Liberty Mut. Ins. Co.*, 46 F.3d 230, 234 (2d Cir. 1995).

In this case, the Plaintiff should be granted leave to file her proposed Second Amended Complaint. A copy of that proposed Second Amended Complaint is attached hereto as Exhibit A. There has been no delay (and certainly no undue delay) in moving for amendment, where this Motion is being brought in response to Defendant Experian's pre-answer Motion to Dismiss. While the Plaintiff amended her Complaint as of right just last month to add certain allegations regarding the sufficiency of Experian's procedures, the fact that the Plaintiff had *also* disputed Experian's inaccurate reporting was missed at that time, at least until counsel was reviewing this file in order to oppose Experian's pending Motion to Dismiss.

Upon realizing this oversight, Plaintiff's counsel promptly sent Experian's counsel copies of the dispute letter, the proof of mailing, and Experian's own dispute response. Thoe proposed additional allegations about Plaintiff's dispute are highly germane to Defendant's Motion to Dismiss – indeed, the entire theme underlying Experian's current Motion to Dismiss is that "once Plaintiff identified the errors she complains of in this case, she could have notified Experian of the alleged inaccuracy, triggering Experian's duty to reinvestigate." *See,* Docket 13, page 11.

4

While Plaintiff has asked Experian to stipulate to the filing of the proposed Second Amended Complaint, Experian has refused to do so, necessitating the instant Cross-Motion. This is a pointless use of judicial resources, given that the Seventh Circuit has held that any dismissal should be with leave to amend anyway: "unless it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss." *Barry Aviation v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004). "Thus, even if Defendants' motion to dismiss would be granted, Plaintiff would be given leave to amend. Given this, it makes no sense for the Court to expend the time and effort to decide and issue an opinion as to whether a complaint, which is certain to be replaced, states a claim." *Toft v. Harbor Diversified, Inc.*, 2024 U.S. Dist. LEXIS 126670, at *3 (E.D. Wis. July 18, 2024).

Moreover, **Experian has always been aware of the Plaintiff's dispute, considering it responded to that dispute.** The proposed Second Amended Complaint therefore could not possibly prejudice Experian, given that it is premised on facts always known to Experian; instead, it simply fleshes out the Plaintiff's claims for why Experian's procedures are not adequate, and includes an additional claim for Experian's inadequate investigation of the Plaintiff's dispute. Discovery has not yet commenced in this case, and there hasn't been a deadline entered in this action for the amendment of pleadings. Allowing the amendment of the Plaintiff's Complaint would further allow the parties to avoid needless motion practice over a mooted Complaint, and would enable the Court to address the issues raised by the Defendant on a more complete record.

Moreover, the proposed Second Amended Complaint is not futile. Instead, as set forth below, the Plaintiff's claims under Section 1681e(b) survive with or without those additional allegations, because the Plaintiff adequately alleges Experian knows about (1) her Chapter 7

5

bankruptcy discharge, (2) the fact that pre-conversion Chapter 7 debts are generally discharged in bankruptcy and (3) the fact that it has been on notice that its bankruptcy-related procedures have been allowing for widespread reporting of inaccurate information. These allegations must be taken as true at this stage in the case. And when taken as true, those allegations clearly state a claim for a violation of the FCRA, because those same exact same facts have resulted in the denial of Experian's summary judgment motion filed in this District.

For these reasons, the Court should decline to consider the Defendant's Motion to Dismiss, and should instead grant the Plaintiff's Cross-Motion to Amend, so that judicial resources are not wasted on considering the sufficiency of a Complaint that will soon be mooted anyway.

### B. The First Amended Complaint Adequately Alleges A Violation Of Section 1681e(b) Of The FCRA.

The credit information reporting practices of Experian and other consumer reporting agencies are regulated by the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* (the "FCRA"). The FCRA was enacted "to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a). Of paramount concern to the drafters of the FCRA was the aim "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007); S.Rep. No. 108–166, 108th Cong., 1st Sess. 5–6 (2003)("The driving force behind the [1996 amendments to the FCRA] was the significant amount of inaccurate information that was being reported by consumer reporting agencies and the difficulties that consumers faced getting such errors corrected").

The courts have repeatedly noted that "The Fair Credit Reporting Act is remedial legislation, which is to be liberally construed in favor of consumers." *Collins v. Admin. Office of the Ky. Courts*, 2013 U.S. Dist. LEXIS 133336, at *3 (E.D. Ky. Sep. 18, 2013); *Jones v. Federated*

6

*Fin. Reserve Corp.*, 144 F.3d 961, 964 (6th Cir. 1998)(noting that the court was "guided by the fact that the FCRA is to be liberally construed in favor of the consumer"); *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995)("The legislative history of the FCRA reveals that it was crafted to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner. These consumer oriented objectives support a liberal construction of the FCRA"). As noted by the Third Circuit, the breadth and scope of the FCRA "is both evident and extraordinary.... Moreover, it is undeniably a remedial statute that must be read in a liberal manner in order to effectuate the congressional intent underlying it.... It is imperative that we do not allow a company that traffics in the reputations of ordinary people a free pass to ignore the requirements of the FCRA each time it creatively incorporates a new piece of personal consumer information in its reports." *Seamans v. Temple Univ.*, 744 F.3d 853, 868 (3d Cir. 2014).

The standard of care required by the FCRA involving the accuracy of credit reports is stated in 15 U.S.C. §1681e(b): "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure <u>maximum</u> possible accuracy of the information concerning the individual about whom the report relates." *Id.* That standard was not met here, where the Plaintiff alleges that Experian reported that she owed thousands of dollars on debts that were discharged in bankruptcy despite Experian being aware that (1) Plaintiff had received a discharge in Chapter 7 and (2) that Chapter 7 discharges eliminate all statutorily dischargeable debts, with very limited exceptions. *See,* Docket 11, ¶26-27, 43-44. Plaintiff further alleges that Experian reported her *other* debts as discharged in bankruptcy, so it plainly was aware that the Plaintiff had received a discharge in bankruptcy and of the effects of that discharge. *ISd.*, ¶51-53.

7

Indeed, Experian is aware that Chapter 7 bankruptcy discharges presumptively discharges a consumer's debts incurred before the petition was filed. In Experian's own words, filed in the public record in another matter currently pending in this District:

> Experian employs a specific set of procedures referred to as its "bankruptcy scrub," to assure that credit information is properly updated following a consumer bankruptcy. This scrub is the result of an injunctive order issued in the *White-Hernandez* litigation, a nationwide class action prosecuted in the Central District of California, designed to implement reasonable assumptions about which debts are, or are not discharged. *White v. Experian Info. Sols., Inc.*, No. 05-CV-1073, 2008 WL 11518799, at *7–*13 (C.D. Cal. Aug. 19, 2008) (the "*White* Order").

*See,* Exhibit B, Experian's Motion for Summary Judgment filed in *Butler v. Experian,* filed in this District bearing Civil Action Number 1:24-cv-00211.

Thus, Experian is aware of the general presumptions that apply to the discharge of debts in Chapter 7 bankruptcy, and indeed claims to utilize such procedures, regardless of what its furnishers are telling it. As many courts have told Experian, the failure to properly apply those general presumptions can therefore give rise to a claim that Experian lacks adequate to assure the *maximum* possible accuracy of the information it reports, as required by Section 1681e(b) of the FCRA. *See e.g., Gibson v. Experian Info. Sols.,* 494 F. Supp. 3d 613, 617 (E.D. Mo. 2020)(holding that "at this early stage, the Court is persuaded by multiple district court determinations that notice of a Chapter 7 bankruptcy, as evidenced by a CRA's own reporting of such a bankruptcy, makes it plausible to allege that continued reporting of a prior unsecured debt is unreasonable" and that "the *White* settlement makes clear that the CRAs knew that unsecured consumer debts are typically discharged in Chapter 7 proceedings. Moreover, the *White* settlement itself provides notice that not updating such accounts after a Chapter 7 bankruptcy may fail to comport with § 1681e(b)"), quoting *Morris v. Experian Info. Sols., Inc.*, 478 F. Supp. 3d 765, 2020 WL 4703900, at *3 (D. Minn. 2020) (similarly denying Experian's motion to dismiss on this basis); *Alsibai v. Experian*

8

*Info. Sols., Inc.*, 488 F. Supp. 3d 840, 847-48 (D. Minn. 2020)(finding that consumer sufficiently alleged a claim under Section 1681e(b) of the FCRA, where he alleged that the credit reporting agency "had reason to know that its reporting of the Citibank Account was inaccurate because it was also reporting his bankruptcy as discharged and all his other bankruptcy debts as discharged").

      Here, the Plaintiff's debts were incurred after the filing of her Chapter 13 bankruptcy, but before the conversion to a Chapter 7 bankruptcy. Experian could have easily therefore applied the same presumptions to these debts, because – as the boilerplate Chapter 7 Bankruptcy discharge Order itself provides – "if this case began under a different chapter of the Bankruptcy Code and was later converted to chapter 7, debts owed before the conversion are discharged." *See,* Exhibit C, Plaintiff's Bankruptcy Discharge Order, page 1. Thus, because the Plaintiff received a Chapter 7 Bankruptcy Discharge, those same presumptions should have been applied here as well. The problem is, as alleged in the Amended Complaint, with Experian's failure to have procedures in place to address this situation: "while Experian is aware that consumers *often* convert their bankruptcies to a Chapter 7 bankruptcy, Experian specifically does nothing to determine *when* that conversion took place, in order to determine whether a consumer's debts or account was opened or incurred prior to the conversion of the Chapter 7 bankruptcy." *See e.g.,* Docket 11, ¶56. This is despite that information being readily available to Experian from the public bankruptcy dockets - and from the exact same vendors - from which they obtain the bankruptcy related information that they do obtain. *See id.*, ¶79. Experian cannot possibly maintain that this inaccurate reporting took place despite the maintenance of reasonable procedures designed to assure maximum possible accuracy, when the undisputed allegations in this action are that Experian maintains *zero* procedures to determine when the conversion to Chapter 7 takes place, so that the above presumptions can be properly applied.

9

Further supporting the conclusion that Experian does not maintain the requisite procedures to assure the maximum possible accuracy of the information it reports, as required by the FCRA, is the fact that none of the other credit reporting agencies had the same issue reporting these debts accurately. *See,* Docket 11, ¶78 ("None of the other major credit reporting agencies, such as Equifax or Transunion, were reporting the same inaccurate and obsolete information that Experian was, and (unlike Experian) they instead accurately reported these discharged debts as having a zero dollar balance"). *See e.g., Benjamin v. Experian Info. Sols., Inc.*, 561 F. Supp. 3d 1330, 1360 (N.D. Ga. 2021) (denying Experian's motion for summary judgment where Experian reported a balance despite being aware of the plaintiff's Chapter 7 bankruptcy discharge because "Plaintiff has shown that Trans Union and Equifax did not report the same error related to the Account, which suggests that they have implemented stricter procedures to produce greater accuracy"); *Ferrin v. Experian Info. Sols., Inc.,* 617 F. Supp. 3d 998, 1008 n.14 (D. Minn. 2022)("Given that other CRAs did not make the same reporting errors but correctly reported the Firefly and Target accounts as discharged in bankruptcy, the Court cannot find that Experian's procedures were reasonable as a matter of law"); *Gadomski v. Equifax Info. Servs., LLC*, 2020 U.S. Dist. LEXIS 119792, at *13-14 (E.D. Cal. July 6, 2020)("Plaintiff's allegation that Experian and TransUnion did not make the same error also leads to a reasonable inference that Defendant failed to follow reasonable procedures in Plaintiff's case"); *Gibson v. Experian Info. Sols.,* 494 F. Supp. 3d at 617 ("Lending further plausibility to Plaintiff's allegation that Experian failed to follow reasonable procedures is the fact that neither of the other dominant CRAs reported the inaccuracy").

Defendant's arguments are not to the contrary. For example, Experian cites to *Henson v. CSC Credit Services*, 29 F.3d 280 (7th Cir. 1994) for the proposition that "the reliance on public court dockets was reasonable as a matter of law until a consumer notifies the CRA of a problem

10

with the accuracy of its reporting." *See,* Docket 13, at 9. In *Henson,* a judgment was obtained against an individual, but the court clerk erroneously noted that judgment as against another person in the judgment docket. *See Henson,* 29 F.3d at 282. The district court dismissed the plaintiff's 1681e(b) claim and the Seventh Circuit affirmed, finding that - short of a dispute alerting the credit reporting agency of the error - "requiring credit reporting agencies to look beyond the face of every court document to find the rare case when a document incorrectly reports the result of the underlying action would be unduly burdensome and inefficient." *Id.,* at 285-286. *Henson* is facially inapplicable here, where Experian did not accurately report from a public record. If anything, the information reported by Experian *conflicts* with the public record because (as Experian concedes), the Plaintiff specifically listed these debts on her bankruptcy schedules as debts to be discharged. *See e.g.* Docket 13, at 4 (conceding that "Plaintiff amended her bankruptcy schedules to include the Post-Petition Accounts"); Exhibit D, Amended Schedules, pages 7, 10.

Experian's reliance on *Sarver v. Experian Info. Sols.*, 390 F.3d 969 (7th Cir. 2004) is similarly unavailing. In *Sarver,* the consumer premised his Section 1681e(b) claim on anomalous information reported by a furnisher and maintained that Experian should have caught this issue even before he disputed it. The Seventh Circuit held that "in the absence of notice of prevalent unreliable information from a reporting lender, which would put Experian on notice that problems exist, we cannot find that such a requirement to investigate would be reasonable". *Id.,* at 972. That holding has little applicability to the facts of this case, where the Amended Complaint specifically does allege that Experian was on notice of (1) Plaintiff's bankruptcy, (2) the fact that debts are generally discharged in a Chapter 7 bankruptcy, as well as (3) widespread issues with its bankruptcy reporting procedures. *See e.g.,* Docket 11, ¶23, 34, 36-37. As the Honorable Judge Sharon Johnson Coleman already told Experian in another case similar to this one: "The Seventh

11

Circuit's rulings in *Henson* and *Sarver* are inapposite. There, CRAs reported inaccurate information received from reliable sources without notice of inaccuracy. **Here, the discharge order put Experian on notice that Laura's accounts may be affected by her bankruptcy**." *Laura v. Experian Info. Sols., Inc.*, 2022 U.S. Dist. LEXIS 48445, at *7 (emphasis added)

Like in Judge Johnson Coleman's findings in *Laura,* Experian's reliance on *Sarver* and its progeny was also rejected in *Morris v. Experian Info. Sols., Inc.*, 478 F. Supp. 3d 765 (D. Minn. 2020), where the district court held that "Defendants read too much into those cases, however. Those cases do not require the plaintiff to provide notice in every § 1681e(b) case, but merely hold that, unless a CRA has reason to doubt the reliability of a source of information, the CRA acts reasonably in relying on that source and does not have to independently investigate the accuracy of the source's information." *Id.,* at 768-69. The *Morris* court denied Experian's Motion to Dismiss in that case, even though the plaintiff had not disputed the reporting of the account, because - in cases like this one - Experian is indeed on notice of the issues with its reporting of accounts that had been discharged in bankruptcy:

> Morris alleges that the CRAs knew that she had obtained a Chapter 7 discharge and, as the *White* settlement makes clear, the CRAs knew that unsecured consumer debts such as the Comenity account are typically discharged in Chapter 7 proceedings.
>
> Morever, the *White* settlement itself provides notice that not updating such accounts after a Chapter 7 bankruptcy may fail to comport with § 1681e(b). The Court therefore rejects the CRAs' argument that, because Morris did not notify them of the error or otherwise seek to correct the reports before filing suit, her § 1681e(b) claim fails as a matter of law.

*Morris v. Experian Info. Sols., Inc.*, 478 F. Supp. 3d at 769.

Experian's reliance on these holdings was distinguished yet again in *Gibson v. Experian Info. Sols.*, 494 F. Supp. 3d 613 (E.D. Mo. 2020), again under similar facts to those presented here. In that case, the district court noted Experian's reliance on *Sarver* for the proposition that §

12

1681e(b) "does not hold a reporting agency responsible where an item of information, received from a source that it reasonably believes is reputable, turns out to be inaccurate unless the agency receives notice of systemic problems with its procedures." *Id.*, at 616. The *Gibson* court went on to note that "however, this notice may be constructive; section 1681e(b) does not require a consumer to notify the CRA of an error." *Id.* And in that case, the district court found that Experian had such constructive notice where, just as here, it was aware of the consumer's Chapter 7 bankruptcy discharge:

> At this early stage, the Court is persuaded by multiple district court determinations that notice of a Chapter 7 bankruptcy, as evidenced by a CRA's own reporting of such a bankruptcy, makes it plausible to allege that continued reporting of a prior unsecured debt is unreasonable….Indeed, as one district court recently recognized when addressing a similar argument by Experian: 'the *White* settlement makes clear the CRAs knew that unsecured consumer debts . . . are typically discharged in Chapter 7 proceedings. Moreover, the *White* settlement itself provides notice that not updating such accounts after a Chapter 7 bankruptcy may fail to comport with § 1681e(b).' *Morris v. Experian Info. Sols., Inc.*, 478 F. Supp. 3d 765, 2020 WL 4703900, at *3 (D. Minn. 2020) (denying Experian's motion to dismiss).
>
> Although the *White* settlement is not binding on this Court, it lends plausibility to Plaintiff's allegation that Experian was on notice of a systemic problem.
>
> *Gibson v. Experian Info. Sols.*, 494 F. Supp. 3d 613, 616-18 (E.D. Mo. 2020).

What all of the above cases point to is a conclusion that it is reasonable to require credit reporting agencies like Experian to apply certain presumptions to the reporting of accounts, upon receiving notice of the consumer's discharge in bankruptcy. And on the flip side, it is *unreasonable* for Experian to simply ignore the entry of a Chapter 7 bankruptcy discharge, and simply wait for the furnisher or the consumer to tell it otherwise, before correcting the information it reports. Experian concludes its Motion by summarizing that "At bottom, Plaintiff's allegations would require Experian to monitor consumer bankruptcies and perfectly determine their effects." *See e.g.,* Docket 13, at 11. This is a red herring; no one is requiring 'perfect determinations' from

Experian about the legal effects of bankruptcies. What we are seeking, however, is the maintenance of reasonable procedures to assure the *maximum possible accuracy* of the information reported by Experian, considering Experian already reports information about those bankruptcies. As Judge Johnson Coleman found, "this is not a case where Experian need resolve complex legal issues. Experian can reasonably apply a Chapter 7 bankruptcy discharge order to a consumer's credit file, as evidenced by the comprehensive *White* Order, under which Experian admits it should have assumed that the bankruptcy discharged the Midwest account". *Laura v. Experian Info. Sols., Inc.*, 2022 U.S. Dist. LEXIS 48445, at *7-8. *See also, Ferrin v. Experian Info. Sols., Inc.,* 617 F. Supp. 3d 998, 1004-06 (D. Minn. 2022)("Experian's contention that it is not expected to make a legal determination of the effect of a bankruptcy on a debt is true as far as is it goes. But it does not resolve the ultimate issue—that is, whether its procedures were reasonable as a matter of law. The evidence shows that Experian had notice of Ferrin's Chapter 7 bankruptcy, and knew the Firefly and Target accounts predated his bankruptcy. Moreover, from a legal standpoint, there is nothing particularly complicated about the effect of a Chapter 7 bankruptcy. If anything, there is a presumption *in favor of discharge*, not the other way around. Given the information Experian had about Ferrin's debts and bankruptcy, the Court cannot determine the procedures were reasonable as a matter of law").

## CONCLUSION

Experian tries to jump the gun by seeking an early dismissal of this case but, in doing so, disregards the standards applied to such a Rule 12 motion. In this case, the Plaintiff's 13-page Amended Complaint sufficiently details the inaccurate information that Experian reported, Experian's knowledge of those inaccuracies and the problems with Experian's credit reporting procedures with regards to accounts discharged following conversion to a Chapter 7 bankruptcy.

Given those clear allegations, and the myriad holdings that have rejected Experian's arguments under identical facts, Experian is plainly not warranted to an early dismissal of the Plaintiff's claims.

However, the Court should decline to reach the issues raised in Defendant's Motion to Dismiss, given Plaintiff's pending Cross-Motion to Amend. Instead, Plaintiff's Cross-Motion should be freely granted under FRCP 15, so that any legal challenges in this case can be considered on a full and complete record.

Respectfully submitted,

**MARCUS & ZELMAN, LLC**

By: /s/ Yitzchak Zelman
Yitzchak Zelman, Esq. (YZ5857)
Marcus Zelman, LLC.
701 Cookman Avenue, Suite 300
Asbury Park, New Jersey 07712
Phone: (732) 695-3282
*Attorney for the Plaintiff Felicia Hollins*