UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHANGO BUTLER,<br><br>               Plaintiff,<br><br>v.<br><br>TRANS UNION, LLC and EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>               Defendants. | Case No. 1:24-cv-00211 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT EXPERIAN
INFORMATION SOLUTIONS, INC.'S MOTION FOR SUMMARY JUDGMENT**

      Plaintiff Shango Butler's ("Plaintiff") claims under the Fair Credit Reporting Act ("FCRA") are baseless, unsupported by the record and the law. Plaintiff is one of the hundreds of thousands of consumers who file bankruptcy each year. In October 2018, Plaintiff filed a Chapter 13 bankruptcy, scheduling 18 unsecured claims, but the bankruptcy was dismissed for failure to make plan payments. Five years later, Plaintiff filed again for a Chapter 7 bankruptcy, this time scheduling 22 unsecured claims. Now, he alleges that Experian violated the FCRA by failing to report one of these debts as discharged, even though the data furnisher, WebBank/Fingerhut ("Fingerhut"), had instructed Experian *not to* report the account as included in bankruptcy and there is no evidence that Experian had notice of an issue with Fingerhut's reporting. Indeed, Plaintiff inexplicably opted *not to* notify Experian of a problem. It has long been the law in this Circuit and others that the FCRA does not impose strict liability and so a consumer reporting agency ("CRA") like Experian does not violate the FCRA by reporting information received from financial institutions without notice of a problem, even if that reporting turns out to be inaccurate or incomplete.

- 1 -

It is also the law in this Circuit, and increasingly throughout the country, that 15 U.S.C. § 1681e(b), the FCRA's reasonable procedures provision (Plaintiff's sole claim), does not require Experian to wade into individual bankruptcies and determine which debts are discharged and which are not. The volume of consumer bankruptcies, the number of debts involved, the variety of exceptions to discharge, all coupled with the volume of data Experian handles make this type of *sua sponte* investigation wildly inefficient and unreasonable. This is especially true in cases like this one, where Plaintiff chose to forego the FCRA's primary mechanism for correcting inaccurate information: the dispute and reinvestigation provisions of 15 U.S.C. § 1681i.

Moreover, the record shows that Plaintiff has not suffered any actual damages, another required element of his claim. And he cannot show that it was objectively unreasonable for Experian to report information that it had received from a reliable furnisher, further defeating his willful claim. Therefore, Plaintiff's claim necessarily fails, and his case should be dismissed with prejudice.

## BACKGROUND

### I. LEGAL LANDSCAPE

#### A. The Fair Credit Reporting Act.

The FCRA requires CRAs to follow "reasonable procedures to assure maximum possible accuracy" of consumer reports. 15 U.S.C. § 1681e(b). To comply, CRAs must "accurately transcribe, store and communicate consumer information received from a source that it reasonably believes to be reputable, in a manner that is logical on its face." Fed'l Trade Comm'n, 40 Years of Experience with the Fair Credit Reporting Act, Jul. 2011, 59 (*available at* https://www.ftc.gov/sites/default/files/documents/reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary-interpretations/110720fcrareport.pdf). The FCRA has been amended over the years to ensure that consumers can obtain free copies of their credit files, 15 U.S.C. § 1681g; and if the consumer spots an error, the consumer can contact the CRA directly to dispute the

information, and the CRA must then conduct a reasonable reinvestigation free of charge. *See id.* at § 1681i. Congress has structured the FCRA with the knowledge that the volume of data CRAs process makes perfection impossible, so the dispute and reinvestigation provisions are central to the FCRA's accuracy regime:

> The Committee is aware that the consumer reporting system handles almost two billion pieces of data per month and will never be perfectly accurate. Mistakes will occur, and not all of them can be prevented. **Section [1681i] is the heart of the Committee's efforts to ensure the ultimate accuracy of consumer reports by placing important requirements upon consumer reporting agencies after inaccuracies have been detected. Therefore, section [1681i] is designed to ensure that consumers are able to address problems and correct errors in a timely fashion.**

S. REP. NO. 104-185, at 43 (1995) (*available at* https://www.congress.gov/congressional-report/104th-congress/senate-report/185/1) (emphasis added).

The FCRA explicitly authorizes the reporting of consumer bankruptcies. 15 U.S.C. § 1681c(a)(1). And the FCRA authorizes CRAs to report other derogatory information, including "[a]ccounts placed for collection or charged to profit and loss which antedate the report by more than seven years." *Id.* at § 1681c(a)(4).

**B.    Chapter 7 of the U.S. Bankruptcy Code.**

"Chapter 7 of the Bankruptcy Code . . . permits insolvent debtors to discharge their debts by liquidating assets to pay creditors." *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1799–800 (2019) (citing 11 U.S.C. §§ 704(a)(1), 726). Once that process is completed, the bankruptcy court typically enters a discharge order that prevents creditors from taking any collection actions against the debtor. *See* 11 U.S.C. § 524, 727. While most pre-petition debts are discharged, there are also many exceptions. *See*, *e.g.*, 11 U.S.C. § 524(c) (reaffirmed debts not discharged); *id.* at § 523(2)(A) (debts incurred under false pretenses are not discharged); *id.* at § 523(2)(C) (consumer debts of more than $500 incurred within 90 days of filing or cash advances of more than $750 incurred within 70 days of filing are not

dischargeable); *id*. at § 523(3) (unscheduled debts not discharged). Debts incurred after the debtor files bankruptcy are not discharged, *In re Papi*, 427 B.R. 457, 461 (Bankr. N.D. Ill. 2010), and credit card purchases made near the filing may not be dischargeable, depending on the debtor's intent. *See*, *e.g. In re Faulk*, 69 B.R. 743, 756 (Bankr. N.D. Ind. 1986) (purchases made within 18 days of filing bankruptcy were not dischargeable); *In re Pozucek*, 73 B.R. 110, 112 (Bankr. N.D. Ill. 1987) (pattern of increased credit card purchases immediately before filing bankruptcy rendered debts non-dischargeable).

## II. FACTUAL BACKGROUND

### A. Experian's Procedures.

Experian obtains and reports consumer credit information from financial institutions like WebBank/Fingerhut ("Fingerhut"), referred to as "data furnishers." Experian's Rule 56.1 Statement of Undisputed Material Facts ("SOF") ¶ 3.[1] Before accepting consumer credit information, Experian investigates the data furnisher to ensure they are reputable and capable of furnishing accurate information. SOF ¶ 4. Experian then monitors the information provided by the data furnisher, rejecting information that is illogical or fails to conform to industry standards. *Id.*

Experian obtains bankruptcy related information in several ways. *First*, Experian obtains general public record information (date, jurisdiction, and Chapter) regarding consumer bankruptcies information from its public records vendor, LexisNexis. SOF ¶ 2. *Second*, data furnishers can report account-level bankruptcy information, indicating when an account has been included or discharged in a bankruptcy, or when the account has been reaffirmed or excluded from the bankruptcy. *See* SOF ¶ 3. *Third*, Experian has procedures to address bankruptcy-related consumer disputes, including

---

[1] With respect to Fingerhut specifically, Experian obtains consumer credit information from Fingerhut through its subscriber entity, Bluestem Brands, Inc. ("Bluestem"). SOF ¶ 7.

- 4 -

procedures that allow it to quickly update accounts a consumer claims were discharged in their bankruptcy, provided the account meets certain conditions. SOF ¶ 6. *Finally*, Experian employs a specific set of procedures referred to as its "bankruptcy scrub," to assure that credit information is properly updated following a consumer bankruptcy. SOF ¶ 5. This scrub is the result of an injunctive order issued in the *White-Hernandez* litigation, a nationwide class action prosecuted in the Central District of California, designed to implement reasonable assumptions about which debts are, or are not discharged. *White v. Experian Info. Sols., Inc.*, No. 05-CV-1073, 2008 WL 11518799, at *7–*13 (C.D. Cal. Aug. 19, 2008) (the "*White* Order"). The *White* Order also provides specific exceptions when Experian *should not* assume that a debt was discharged. Relevant here, when a data furnisher reports a Consumer Information Indicator of "Q" – the industry-standard means of indicating that a debt was not included or discharged in a consumer's bankruptcy, the *White* order indicates that the account may be excluded from the scrub update. *Id.* at *12.

    **B.**    **Plaintiff's Bankruptcy and Experian File.**

On October 24, 2018, Plaintiff filed a Chapter 13 bankruptcy. Included in his schedules was a debt with Fingerhut. SOF ¶ 8. On May 26, 2021, Plaintiff's Chapter 13 bankruptcy was dismissed due to lack of payment. SOF ¶ 9; Ex. B (Order Granting Dismissal). On May 18, 2023, Plaintiff filed a Petition for Chapter 7 bankruptcy, and LexisNexis notified Experian of that fact the same day. SOF ¶ 12. On August 30, 2023, a discharge order was entered in Plaintiff's bankruptcy case, and LexisNexis informed Experian of that fact the next day. SOF ¶ 13. The discharge order warns the reader:

> This information is only a general summary of the bankruptcy discharge; some exceptions exist. Because the law is complicated, you should consult an attorney to determine the exact effect of the discharge in this case.

- 5 -

Ex. E at 2 (Discharge Order).

Experian's initial bankruptcy scrub ran within eight days of Plaintiff's Chapter 7 discharge. SOF ¶ 14. At that time, Fingerhut was reporting a CII Code of "Q." In accordance with the *White* order, Experian did not update the Fingerhut account as a part of Experian's bankruptcy scrub.

In January 2024, when this case began, the Fingerhut account was reporting as shown:



SOF ¶ 15.

Prior to filing this case, Plaintiff did not contact Experian to dispute this reporting or to ask Experian to note that the account was discharged in Plaintiff's bankruptcy. SOF ¶ 18. Once Experian had notice of the issue via Plaintiff's complaint, Experian applied the same procedures that it applies to consumer disputes, updating the account to report as discharged:



SOF ¶ 17.

- 6 -

**STANDARD OF REVIEW**

Summary judgment is warranted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.56(a). The moving party has the initial burden to show, based on the pleadings and record evidence, the "absence of a genuine issue of material fact," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), meaning any "fact[] that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Once the moving party has shown that no dispute of a material fact exists, the burden shifts to the non-moving party, to show that the record, "if reduced to admissible evidence, would be sufficient to carry [his] burden of proof at trial." *Celotex*, 477 U.S. at 327; *see Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627 (7th Cir. 2014). While the evidence is "viewed in the light most favorable" to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 457 (7th Cir. 2020), a non-movant cannot rely on "[c]onclusory allegations" to create the existence of a material fact. *Igasaki v. Illinois Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 956 (7th Cir. 2021).

**ARGUMENT**

Plaintiff's claim is nothing more than an attempt to impose strict liability under the FCRA, ignoring settled-law. The structure of the FCRA and a wealth of case law all teach the same lesson: the reasonable procedures provision of § 1681e(b) does not require Experian to accurately determine the effects of a consumer's bankruptcy on individual debts. Once Plaintiff learned of an error in his credit report, his next step was to contact Experian and ask Experian to correct the error, not resort to federal litigation on a theory that necessarily fails. Moreover, Plaintiff has not produced any evidence of actual damages, a necessary element of his negligence claim. And, because Experian's procedures are well-grounded in both the text and law of the FCRA, Experian's actions cannot have been willful. Summary judgment is the "put up or shut up" moment in a federal lawsuit, *Brown v. CACH, LLC*, 94

F.4th 665, 667 (7th Cir. 2024), and Plaintiff has no evidence to support his theories. His case should be dismissed.

## I. THERE IS NO EVIDENCE THAT EXPERIAN VIOLATED SECTION 1681e(b) OF THE FAIR CREDIT REPORTING ACT.

### A. Plaintiff's Theory of Inaccuracy.

To survive summary judgment, Plaintiff must "show that a consumer reporting agency prepared a report containing 'inaccurate' information." *Denan v. Trans Union LLC*, 959 F.3d 290, 294 (7th Cir. 2020). "Accuracy is not defined in the statute, but it has long been understood that "accuracy" encompasses both truth and completeness—a report that is misleading or materially incomplete is inaccurate." *Chaitoff v. Experian Info. Sols., Inc.*, 79 F.4th 800, 809 (7th Cir. 2023).

Here, Plaintiff must depend on a theory that Experian's reporting was incomplete. There is no evidence that the information Experian was reporting was factually incorrect. For instance, there is no evidence that Fingerhut did not charge off this account or that the historical facts Experian was reporting were incorrect. Courts have repeatedly recognized that a bankruptcy court's discharge order does not rewrite history or render accurate pre-discharge information incorrect. *See, e.g.*, *Doster v. Experian Info. Sols., Inc.*, No. 16-CV-04629-LHK, 2017 WL 264401, at *5 (N.D. Cal. Jan. 20, 2017) (collecting cases and explaining "the legal status of a debt does not change until the debtor is discharged from bankruptcy . . . it is not misleading or inaccurate to report delinquent debt during the pendency of a bankruptcy proceeding but before discharge."). Conversely, Courts have held that post-discharge reporting of a debt that was discharged can be misleading because it may imply that the consumer remains personally obligated to pay the debt. *See, e.g.*, *Gagnon v. JPMorgan Chase Bank, N.A.*, No. 15-CV-9526, 2017 WL 11891678, at *3 (N.D. Ill. Apr. 13, 2017); *see also*, Fed. Trade. Comm'n, 40 Years of Experience With the Fair Credit Reporting Act, 2011 WL 3020575, at *61 ("A consumer report may include an account that was discharged in bankruptcy (as well as the bankruptcy

- 8 -

itself), as long as it reports a zero balance to reflect the fact that the consumer is no longer liable for the discharged debt.").

In short, there is no evidence that any of Experian's factual reporting was wrong, and Plaintiff's claim can only be one of incompleteness: That after his August 30, 2023 bankruptcy discharge order was entered, Experian's reporting omitted the fact that the debt was discharged and reported a $108 balance as of September 2023.[2]

**B. Section 1681e(b) Does Not Require Experian To Determine When a Debt Is Discharged in Bankruptcy.**

In addition to showing that Experian's reporting was inaccurate, Plaintiff must also show that this inaccuracy was "due to [Experian's] failure to follow reasonable procedures to assure maximum possible accuracy." *Benson v. Trans Union, LLC*, 387 F. Supp. 2d 834, 840 (N.D. Ill. 2005); 15 U.S.C. § 1681e(b). But the FCRA's plain text and controlling case law all show that Plaintiff cannot meet this requirement.

It is black-letter law that "the Fair Credit Reporting Act is not a strict liability statute." *Walton v. BMO Harris Bank*, 761 F. App'x 589, 592 (7th Cir. 2019). The Seventh Circuit has clearly established the parameters of § 1681e(b). In *Henson v. CSC Credit Servs.*, the Court held that CRAs' reliance on public court dockets was reasonable as a matter of law until a consumer notified the CRA of a problem. *See* 29 F.3d 280, 285 (7th Cir. 1994). In *Sarver v. Experian Info. Sols.*, a case also involving the impact of a consumer's bankruptcy on individual debts, the Seventh Circuit extended this reasoning to reliance on information furnished by financial institutions. *See* 390 F.3d 969, 972–73 (7th Cir. 2004). In *Childress v. Experian Info. Sols., Inc.*, the court similarly explained that it would be *unreasonable* for CRAs to "require a live human being . . . to review every bankruptcy dismissal"

---

[2] To be sure, the record is devoid of evidence to show that anyone was actually misled by Experian's reporting.

to determine whether an individual bankruptcy withdrawal was voluntary or involuntary. *See* 790 F.3d 745, 747 (7th Cir. 2015).

These cases all lead to the same conclusion: § 1681e(b) does not require CRAs to account for the many unique exceptions and vagaries that can arise in an individual consumer's bankruptcy, especially when the general discharge order expressly informs the reader that it is only a summary and instructs the debtor to obtain legal counsel to ascertain the exact effects on a specific debt. *See, e.g.*, *Hupfauer v. Citibank, N.A.*, No. 16 C 475, 2016 WL 4506798, at *7 (N.D. Ill. Aug. 19, 2016) (citing *Childress*, 790 F.3d at 747). Nor are these cases outliers, as numerous other Circuit courts have adopted similar principles. *E.g.*, *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997); *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 945 (11th Cir. 2021) (adopting *Cushman*, *Henson*, and *Sarver* and affirming grant of summary judgment for Experian).

Building on these courts' reasoning, the Eighth Circuit affirmed dismissal of a § 168e(b) claim against Experian involving nearly identical facts as presented here. *See Rydholm v. Equifax Info. Servs. LLC*, 44 F.4th 1105, 1109 (8th Cir. 2022). In *Rydholm*, the consumer obtained a Chapter 7 bankruptcy but sued Experian for failing to report one account as discharged in the plaintiff's bankruptcy. *See id.* at 1107. The Eighth Circuit rejected the same theory Plaintiff advances here:

> Though both CRAs had notice of Rydholm's general discharge, that fact alone is insufficient to trigger a duty to investigate. The bankruptcy code provides numerous exceptions to discharge and even authorizes a debtor to reaffirm certain obligations afterwards. Absent notice that the discharge specifically included the *1765 account, neither CRA had information contrary to what Wells Fargo reported to them.
>
> The practical effect of finding a § 1681e(b) violation here would be to require CRAs to wade into individual bankruptcy dockets to discern whether a debt survived discharge. Consumers file hundreds of thousands of Chapter 7 bankruptcy petitions every year. We join our sister circuits in rejecting the invitation to mandate that CRAs hire individuals with legal training to preemptively determine the validity of reported debts. Simply put, "the cost of verifying the accuracy of the source" outweighs "the possible harm inaccurately reported information may cause" a consumer. The FCRA requires reasonable—not perfect—procedures.

*Rydholm,* 44 F.4th at 1109 (quoting *Henson*, 29 F.3d at 287) (citing *Childress*, 790 F.3d at 747; *Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232, 1241 (10th Cir. 2015)) (other citations omitted).

**C.  There Is No Evidence That Experian Had Any Notice That The Fingerhut Account Was Discharged Or Reporting Inaccurately.**

The reasoning of *Henson*, *Sarver*, *Childress*, and *Rydholm* is equally true here. Plaintiff was just one of hundreds of thousands of consumers who filed bankruptcy in 2023. *See Table F-2: U.S. Bankruptcy Courts—Business and Nonbusiness Cases Commenced, by Chapter of the Bankruptcy Code, During the 12-Month Period Ending December 31, 2023*, USCourts.gov, *https://www.uscourts.gov/file/78080/download* (showing 261,277 Chapter 7 bankruptcies filed in 2023). Plaintiff scheduled 22 unsecured claims in his Chapter 7 filing, including the Fingerhut account at issue here. See Ex. D at 23–32 (Plaintiff's Chapter 7 Bankruptcy Petition). Plaintiff's own discharge order notes that "[s]ome debts are not discharged," including, for example, such debts the court has otherwise decided are not discharged, improperly listed debts, and reaffirmed debts. Ex. E at 2 (Discharge Order). Moreover, the account furnisher itself was reporting that the debt was not included in bankruptcy. *See* SOF ¶ 14 (describing Fingerhut's continued reporting of a CII Code of "Q" for the account). There were a multitude of legitimate reasons explaining why Fingerhut might continue to report Plaintiff's account as Charged Off following his Chapter 7 bankruptcy.

More importantly, the Seventh Circuit has repeatedly emphasized the consumer's role in identifying inaccurate information, then contacting the CRA to dispute and correct that information:

> Requiring credit reporting agencies to look beyond the face of every court document to find the rare case when a document incorrectly reports the result of the underlying action would be unduly burdensome and inefficient. ***The consumer is in a better position than the credit reporting agency to detect errors*** appearing in court documents dealing with the consumer's own prior litigation history. ***Once the information is erroneously reported on the consumer's credit report, the consumer will be alerted to the error and can then seek correction of the error by notifying the credit reporting agency or the court itself . . . . A credit reporting agency that has***

- 11 -

> ***been notified of potentially inaccurate information in a consumer's credit report is in a very different position than one who has no such notice.***

*Henson*, 29 F.3d at 285–87 (emphasis added) (affirming dismissal of claims under § 1681e(b), but remanding claims under § 1681i).

Again, *Sarver* is on all fours with Plaintiff's theory and disposes of his claims:

> In his attempt to show that Experian's procedures are unreasonable, Sarver argues that someone should have noticed that only the Cross Country accounts were shown to have been involved in bankruptcy. That anomaly should have alerted Experian, Sarver says, to the fact that the report was inaccurate. ***What Sarver is asking, then, is that each computer-generated report be examined for anomalous information and, if it is found, an investigation be launched. In the absence of notice of prevalent unreliable information from a reporting lender, which would put Experian on notice that problems exist, we cannot find that such a requirement to investigate would be reasonable given the enormous volume of information Experian processes daily***.
>
> We found in *Henson* that a consumer reporting agency was not liable, as a matter of law, for reporting information from a judgment docket unless there was prior notice from the consumer that the information might be inaccurate . . . The same could be said for records from financial institutions.

*Sarver*, 390 F.3d at 972 (emphasis added).

There is no evidence that Experian had any notice of a problem with Fingerhut's reporting, and that lack of notice is compounded by Plaintiff's unusual choice not to contact Experian when he first noticed the issue. Plaintiff was "in a better position" than Experian to identify any errors in Plaintiff's report. *Ruffin-Thompkins v. Experian Info. Sols., Inc.*, 422 F.3d 603, 608 (7th Cir. 2005). Once Plaintiff identified the error he complains of in this case, his next call should have been to Experian, notifying Experian of the problem and requiring Experian to reinvestigate. That is the mechanism Congress created, not rushing to the courthouse at the first sign of an issue.

Without evidence of actual notice of a problem with Fingerhut's reporting, Plaintiff's claims fail as a matter of law.

## II. PLAINTIFF HAS NOT SUFFERED ANY ACTUAL DAMAGES.

"The FCRA does not presume damages . . . the consumer must affirmatively prove that she is entitled to damages." *Ruffin-Thompkins*, 422 F.3d at 610. Indeed, "[b]efore any discussion of the reasonableness of the reinvestigation is necessary, however, [the plaintiff] must show that she 'suffered damages as a result of the inaccurate information.'" *Id.* at 608. Plaintiff cannot make this showing, which alone is enough to grant Experian summary judgment.

Plaintiff alleged that Experian's reporting caused "lower overall creditworthiness" and "emotional distress." Compl. ¶¶ 55–56. But discovery has shown these allegations are vacuous and non-existent. As to the alleged reduced creditworthiness, Plaintiff's only evidence is his own testimony that he threw away or deleted one denial letter, which he claims referred to the Fingerhut account. *See* Ex. H, Excerpted Deposition of S. Butler ("Dep. Butler") at 50:5–51:9. Plaintiff's own hearsay testimony is obviously insufficient at this stage, *see*, *e.g.*, *Moore v. W. Illinois Corr. Ctr.*, 89 F.4th 582, 592 (7th Cir. 2023), and his failure to preserve and produce this evidence also requires its exclusion. *See* Fed. R. Civ. P. 37(c)(1); *Chicago Joe's Tea Room, LLC v. Vill. of Broadview*, 94 F.4th 588, 603 (7th Cir. 2024) ("Under Rule 37, the sanction for failure to disclose is automatic and mandatory unless the sanctioned party can show its violation was either justified or harmless."). Moreover, even if Plaintiff had evidence of a credit denial, he cannot show that Experian's reporting harmed his creditworthiness, when his credit score was 30 points *higher* while Experian was reporting the account as Charged Off. *See* Dep. Butler at 57:13–60:5; *cf. Bueno v. Experian Info. Sols., Inc.*, 664 F. Supp. 3d 800, 807 (N.D. Ill. 2023) (granting dismissal on a § 1681e(b) claim where "Experian prepared a credit report that . . . made [the plaintiff] look better, not worse, than it should have.").

That leaves only Plaintiff's conclusory claims for emotional distress. The Seventh Circuit "maintains a strict standard for a finding of emotional damage 'because they are so easy to manufacture.'" *Sarver*, 390 F.3d at 971. Claims to emotional distress must be explained in detail and

not conclusory. *Id.* Courts routinely grant summary judgment where the only evidence of emotional distress is the plaintiff's own testimony. *See, e.g.*, *Persinger v. Sw. Credit Sys., L.P.*, 20 F.4th 1184, 1194 (7th Cir. 2021); *Jackson v. Experian Info. Sols., Inc.*, 236 F. Supp. 3d 1058, 1064 (N.D. Ill. 2017); *Bagby v. Experian Info. Sols., Inc.*, 162 F. App'x 600, 605 (7th Cir. 2006); *Ruffin-Thompkins*, 422 F.3d at 610; *Sarver*, 390 F.3d at 971. Here, Plaintiff claims that he experienced trouble sleeping, stress, and strained personal relationships. Dep. Butler at 61:4–62:2. But he has not produced any documentary evidence, identified precise dates for these issues, or provided any reasonable explanation such that a jury could find Experian caused any of his supposed distress. Instead, Plaintiff's testimony is indistinguishable from the statement in *Jackson* "that dealing with credit reporting agencies was 'mentally and emotionally distressful,'" which the court determined was "too conclusory to support an emotional damages award." *Jackson*, 236 F. Supp. 3d at 1064.

Because Plaintiff cannot show that he suffered any damages due to Experian's reporting, his claims fail as a matter of law.

### III. THERE IS NO EVIDENCE THAT EXPERIAN WILLFULLY VIOLATED THE FCRA.

To prove that Experian willfully violated 15 U.S.C. § 1681e(b), Plaintiff would need to show that Experian acted knowingly or recklessly: either that it knew that its conduct violated the FCRA or its interpretation of the statute was "objectively unreasonable" and "ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Safeco* 551 U.S. at 68-69; *see also Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006) (contrasting FCRA's willfulness bar with "easier" negligence standard). In *Safeco*, the Supreme Court was clear that a statutory violation is not willful, as a matter of law, where the "statutory text and relevant court and agency guidance allow for more than one reasonable interpretation," and a defendant does not willfully violate the FCRA if it "followed an interpretation that could reasonably have found support in the courts, whatever their subjective intent may have been." *Safeco*, 551 U.S. at 70 n.20.

Nothing in the plain text of the FCRA requires Experian to determine when a debt has been discharged in a consumer's bankruptcy. As explained above, Experian's reliance on Fingerhut is directly in line with Seventh Circuit law on compliance with 15 U.S.C. § 1681e(b). *See supra* at 9–10. Declining to take on the task of wading into bankruptcy dockets is directly supported by the Eight Circuit's opinion in *Rydholm* and the Seventh Circuit's opinion in *Childress*. Likewise, the fact that Experian does not automatically update accounts with a CII of "Q" is supported by (the "*White Order*"). *See supra* at 5. Unsurprisingly, Courts have repeatedly held that compliance with the *White Order*, by itself, forecloses a willful claim under the FCRA. *See*, *e.g.*, *Laura v. Experian Info. Sols., Inc.*, No. 20-CV-01573, 2022 WL 823853, at *4 (N.D. Ill. Mar. 18, 2022); *Ferrin v. Experian Info. Sols., Inc.*, No. 20-CV-841, 617 F. Supp. 3d 998, 1009–10 (D. Minn. 2022); *Campbell v. Experian Info. Sols., Inc.*, No. 20-CV-2498, 2022 WL 3716982, at *5–6 (D. Minn. Aug. 29, 2022).

Experian did not violate the FCRA at all, and certainly did not do so willfully.

## CONCLUSION

For the above reasons, Experian respectfully requests an order of summary judgment dismissing Plaintiff's claims with prejudice.

Dated: October 25, 2024

Respectfully submitted,

By: */s/ John Robert B. DeLaney*
John Robert B. DeLaney,
Bar No. 6345767
rdelaney@jonesday.com

JONES DAY
110 North Wacker Drive, Suite 4800
Chicago, IL  60606
Telephone:  +1.312.269.4207
Facsimile:  +1.312.782.8585

*Counsel for Defendant Experian Information Solutions, Inc.*

- 15 -

- 16 -

## CERTIFICATE OF SERVICE

I hereby certify that on October 25, 2024, I electronically filed a true and accurate copy of the foregoing with the Clerk of Court via CM/ECF, which sent electronic notice of the same to all parties of record.

*/s/ John Robert B. DeLaney*
John Robert B. DeLaney,
Bar No. 6345767
rdelaney@jonesday.com

JONES DAY
110 North Wacker Drive Suite 4800
Chicago, IL  60606
Telephone:     +1.312.269.4207
Facsimile:     +1.312.782.8585

*Counsel for Defendant Experian Information Solutions, Inc.*