**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

FELICIA HOLLINS,

Plaintiff,

v.

EXPERIAN INFORMATION SOLUTIONS, INC.,

Defendant.

**Case No.: 1:24-cv-07664**

**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

1. **FCRA, 15 U.S.C. § 1681 *et seq.***

Plaintiff FELICIA HOLLINS, ("Plaintiff") through counsel, files this second amended complaint as of right, alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* against Defendant Experian Information Services, Inc. (referenced as "Experian").

## I. INTRODUCTION

1. Plaintiff's Second Amended Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* by Experian. Plaintiff contends that Experian (1) failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer reports, and (2) failed to adequately investigate Plaintiff's disputes of inaccurate information being reported by Experian. "Consumer reports" under 15 U.S.C. § 1681a(d) include both credit file disclosures obtained directly by Plaintiff from the consumer reporting agencies and consumer reports obtained by third parties as a factor in establishing Plaintiff's eligibility for credit.

2. Because of Experian's failure to follow reasonable procedures to assure maximum possible accuracy of the information it reports and because of Experian's failure to adequately

investigate the Plaintiff's disputes, Experian falsely reported that the Plaintiff owed nearly $9,000 more than she actually owes, given that those debts have long been discharged in bankruptcy.

## II. JURISDICTION AND VENUE

3. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because Plaintiff alleges violations of the FCRA, a federal law. *See* 15 U.S.C. § 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

4. Venue in the Northern District of Illinois is proper pursuant to 28 U.S.C. § 1391 because Defendant regularly transacts business within this District or are otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## III. PARTIES

5. Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

6. Plaintiff is a natural person who resides in Will County, Illinois.

7. Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

8. Defendant Experian Information Solutions, Inc. ("Experian") is one of the largest credit reporting agencies in the United States and is engaged in the business of assembling and disseminating credit reports concerning hundreds of millions of consumers. Experian is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) of the FCRA, and is regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d)(1) of the FCRA, to third parties.

9. Experian is a corporation with its headquarters located in Costa Mesa, California.

10. During all times pertinent to this Complaint, Experian was authorized to conduct business in the State of Illinois and conducted business in the State of Illinois on a routine and systematic basis.

11. During all times pertinent to this Complaint, Experian acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

12. Any violations by Experian were not in good faith, were knowing, negligent, willful, and/or intentional.

13. Experian did not maintain procedures reasonably adapted to avoid any such violations.

## IV. FACTUAL BACKGROUND

14. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

15. The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

16. Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

17. The FCRA is intended to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

18. Experian, Trans Union, and Equifax, the three major consumer reporting agencies (at times referred to collectively as "CRAs" and individually as a "CRA") in the United States, regularly publish and distribute credit information about Plaintiff and other consumers through the sale of consumer reports.

19. Experian regularly obtains consumer bankruptcy information to include in consumer reports.

20. Experian regularly seeks out and procures public record information, including consumer bankruptcy filing and discharge information, with the intention of including this bankruptcy information on the consumer reports they sell to third parties such as lenders.

21. The diligence Experian exercises in uncovering and recording consumer bankruptcy filings is not replicated in their subsequent reporting of bankruptcy discharges and their effect on consumers' debts.

22. Experian's unreasonable policies, procedures and/or algorithms consistently fail to identify and update pre-bankruptcy debts as required by § 1681(e)(b).

23. Experian knows the information they report about consumers' bankruptcies is often inconsistent with public records, furnished/reported information, and/or information contained in their own files.

24. The majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like Defendant) to make lending decisions.

25. A consumer who has obtained a bankruptcy discharge and has an account reporting with outstanding or past due balances after the bankruptcy discharge suffers greater harm than if that account were accurately reporting with a zero-dollar balance.

26. Experian is well aware that the effect of a Discharge Order in a Chapter 7 Bankruptcy is that all statutorily dischargeable debts, other than those that have been reaffirmed or successfully challenged in an adversary proceeding court, are discharged.

27. However, Experian also knows that pre-petition debts are rarely reaffirmed or successfully challenged in an adversary proceeding.

28. Further, Experian knows that if reaffirmation agreements or adversary proceedings (successful or not) exist, they will be explicitly identified on an individual consumer's bankruptcy docket sheet.

29. Additionally, information indicating whether a specific debt was reaffirmed or successfully challenged through an adversary proceeding (rather than discharged) can be easily retrieved from the same sources from which Experian independently obtains consumer bankruptcy case information.

30. Experian also receives information about account reaffirmations or other discharge exceptions directly from furnishers of account/tradeline information.

31. Despite the availability of accurate consumer information, Experian regularly reports inaccurate information about accounts after consumers receive a Discharge Order.

32. Experian regularly publishes consumer information that conflicts with information: provided by data furnishers to Experian, already included in their credit files, contained in public records that they regularly access, or sourced through their independent and voluntary efforts.

33. Experian routinely reports inaccurate and materially misleading information about consumers like Plaintiff, without verifying or updating it as required by § 1681(e)(b).

34. Defendant knows the information they report about consumers' bankruptcies is often inconsistent with public records, information provided by furnishers, and data contained in Defendant's own files.

35. Defendant also knows that failing to report the effect of a discharge on consumer account tradelines, while reflecting a bankruptcy on a credit report, would reasonably be understood to declare to the world that that the consumer had been in bankruptcy but had not received a discharge of a particular account. This not only inaccurately/incorrectly reflects an outstanding debt, but also would reasonably suggest to a consumer and those reviewing the consumer's credit report that the consumer was guilty of a bad act for which he did not deserve a discharge of a particular debt.[1]

36. Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints against Experian for their inaccurate credit reporting following a Chapter 7 discharge.

37. Thus, Experian is on continued notice of their inadequate post-bankruptcy reporting procedures. More specifically, Defendant is on continued notice that their inadequate procedures regularly result in the reporting of inaccurate balances, account statuses, payment histories, and payment statuses.

*Allegations Specific to Credit Reporting of Plaintiff*

38. Plaintiff filed a Chapter 13 Bankruptcy on or about January 8, 2020, in the United States Bankruptcy Court.

39. On February 9, 2022, Plaintiff's bankruptcy was converted to Chapter 7 Bankruptcy.

[1] Indeed, a bankruptcy discharge is for the "honest but unfortunate debtor," *Grogan v. Garner*, 498 U.S. 279, 287 (1991), and will not be provided to someone who filed bankruptcy in bad faith, failed to report assets, fraudulently transferred assets, engaged in reprehensible pre-bankruptcy conduct such as fraud, defalcation or embezzlement, or caused willful and malicious injury. 11 U.S.C. §§ 727(a), 523(a).

40. Plaintiff received an Order of Discharge on or about May 17, 2022.

41. Thereafter, Plaintiff was not personally liable for any of her dischargeable debts. Upon entry of Plaintiff's Discharge Order, all of Plaintiff's dischargeable debts had zero-dollar balances.

42. Experian prepared one or more consumer reports concerning Plaintiff after Plaintiff was discharged from Chapter 7 Bankruptcy.

43. Experian obtained notice of Plaintiff's bankruptcy discharge through their routine, independent collection of consumer information from third party vendors such as Lexis-Nexis, as well as from furnishers that provide data regarding the individual tradelines reported by the CRAs in Plaintiff's consumer reports.

44. In the Public Records section of Plaintiff's consumer reports, Experian included the bankruptcy case number, court, filing date, and the fact that Plaintiff's bankruptcy had been discharged.

45. Experian is aware that they are generally required to report accounts included in a consumer's Chapter 7 bankruptcy with a status of "discharged through bankruptcy," and/or with a zero-dollar balance, unless a furnisher provides information showing that a specific debt was excluded from the discharge.

46. Experian should have reported **all** of Plaintiff's dischargeable, pre-conversion debt as included in or discharged in Chapter 7 Bankruptcy, and/or with a zero-dollar balance.

47. Experian failed to report **all** of Plaintiff's dischargeable, pre-conversion debts as included in or discharged in Chapter 7 bankruptcy with a zero-dollar balance.

48. Specifically, Experian is inaccurately reporting Plaintiff's LENDING CLUB Account, opened in October of 2021, which predated Plaintiff's Chapter 7 bankruptcy, with a status of "CHARGE OFF" and a past due balance of $5,331.00.

49. The LENDING CLUB account was discharged in May of 2022. Therefore, the Account should have been reported as discharged in bankruptcy, and/or with a zero-dollar balance.

50. Similarly, Experian is inaccurately reporting Plaintiff's UPGRADE INC account, opened in December of 2021, which predated Plaintiff's Chapter 7 bankruptcy, with a status of "CHARGE OFF" and a past due balance of $3,416.00.

51. The UPGRADE INC account was also discharged in May of 2022. Therefore, the Account should have been reported as discharged in bankruptcy, and/or with a zero-dollar balance.

52. Both the LENDING CLUB and UPGRADE INC. accounts were specifically listed as debts to be discharged in the Plaintiff's bankruptcy schedules filed in her bankruptcy.

53. Experian did not indicate that the LENDING CLUB and UPGRADE INC. accounts were discharged in bankruptcy or report the Accounts with a zero balance, despite reporting Plaintiff's bankruptcy in the Public Records section of Plaintiff's consumer reports and indicating that other pre-bankruptcy accounts were "Discharged/Included in Bankruptcy Chapter 7" and carried zero-dollar balances.

54. Experian knew or should have known that Plaintiff's debts were discharged in bankruptcy, including the LENDING CLUB and UPGRADE INC. accounts.

55. Experian reported debts that were in fact discharged in bankruptcy and were therefore required to report these as discharged and/or with a zero balance.

56. Experian contracts with companies like Lexis Nexis to provide it bankruptcy-related information, such as the date of filing of a consumer's bankruptcy, the Chapter under which the bankruptcy was filed (i.e., Chapter 7, 11 or 13), the date the bankruptcy was discharged, and the Chapter under which the consumer's debts were discharged.

57. Experian is thus plainly notified and made aware when a consumer, such as the Plaintiff, converts their non-Chapter 7 bankruptcy to a Chapter 7 bankruptcy, because logic dictates that a conversion occurred when a debtor filed for bankruptcy under one chapter but received a discharge under another.

58. While Experian is aware that consumers often convert their bankruptcies to a Chapter 7 bankruptcy, Experian specifically does nothing to determine *when* that conversion took place, in order to determine whether a consumer's debts or account was opened or incurred prior to the conversion of the Chapter 7 bankruptcy.

*Plaintiff's Damages*

59. Upon information and belief, had Experian accurately reported the LENDING CLUB/UPGRADE INC. accounts with a zero balance, Plaintiff's credit scores and/or debt to income ratio ("DTI") would have been better, thereby improving Plaintiff's credit worthiness.

60. The false increased debt due to Experian's inaccurate reporting also negatively impacts the 30% of credit score which is based on the debt owed divided by credit limits, which impacts post-discharge consumers even more than those who have not filed bankruptcy.

61. As a direct result of Defendant's inaccurate reporting, Plaintiff suffered damages, including a decreased credit score, lower overall creditworthiness, and other financial harm such as credit denial by lenders including Capital One.

62. Plaintiff further had false information disseminated about her to third parties by Experian, depicting Plaintiff as far more indebted than she really was.

63. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, loss of sleep, humiliation, stress, anger, frustration, shock, embarrassment, reputational harm, violation of privacy, and anxiety.

64. Defendant's conduct exacerbated Plaintiff's frustration during the already stressful post-bankruptcy period by hindering Plaintiff's ability to rebuild Plaintiff's credit.

**I. COUNT I**
**AGAINST EXPERIAN**
**Violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681e(b)**

65. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

66. The FCRA requires CRAs to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information. 15 U.S.C. § 1681e(b).

67. In this case, Experian negligently and willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of Plaintiff's credit information after Plaintiff received a Discharge Order.

68. Experian independently sought information about Plaintiff's bankruptcy filing and discharge and voluntarily reported it in Plaintiff's consumer reports.

69. When Experian procured and published Plaintiff's bankruptcy information, it had an obligation to ensure it followed reasonable procedures to report the bankruptcy discharge and its effect(s) with maximal accuracy.

70. These obligations are well established by the plain language of the FCRA, promulgated by the Federal Trade Commission, detailed in case law, and evidenced in prior cases involving Experian from which it is on notice of its unreasonable procedures concerning the reporting of discharged debts.

71. Defendant knew or should have known that the effect of a discharge Order in a no asset Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding.

72. Defendant Experian knew or should have known of its obligations under the FCRA, especially pertaining to reporting discharged debt with a zero-dollar balance.

73. Additionally, Experian possesses or could easily obtain substantial written materials that detail their duties and obligations under the FCRA, including those that apply when a consumer files for Chapter 7 Bankruptcy.

74. Defendant Experian knows that discharged debts should not be reported as late, past due, or with outstanding balances after the discharge date, and should be reported with a zero-dollar balance.

75. Yet Experian inaccurately reported the LENDING CLUB/UPGRADE INC. accounts, which predated Plaintiff's Chapter 7 Bankruptcy, with a status other than "discharged in bankruptcy" and a balance greater than zero.

76. Despite knowledge of these legal obligations, Experian willfully and consciously breached its duties under the FCRA. Accordingly, Experian deprived Plaintiff of Plaintiff's rights under the FCRA.

77. Experian had actual knowledge of Plaintiff's bankruptcy and Discharge Order, as evidenced by the information it published in Plaintiff's consumer reports, including the bankruptcy case number, court, date of filing and date of discharge.

78. Individual furnishers of account information also notified Experian of Plaintiff's bankruptcy, as evidenced by tradelines in Plaintiff's consumer reports that are labeled "discharged in bankruptcy" with zero-dollar balances.

79. Moreover, the Plaintiff herself then disputed this reporting and plainly notified Experian that her bankruptcy had been converted to Chapter 7 in 2022, and that her pre-conversion debts had therefore been discharged in bankruptcy.

80. Yet in this case, Experian reported the LENDING CLUB/UPGRADE INC. accounts, which predated Plaintiff's bankruptcy, as a charge off with a balance owed after Plaintiff's discharge (instead of a zero-dollar balance).

81. Further indicating that the use of reasonable procedures could have prevented this inaccurate reporting, none of the other major credit reporting agencies, such as Equifax or Transunion, were reporting the same inaccurate and obsolete information that Experian was, and (unlike Experian) they instead accurately reported these discharged debts as having a zero dollar balance.

82. Despite being aware of its duties to scrub pre-Chapter 7 filing debts, Experian blindly continues to report debts incurred by a debtor before conversion of their bankruptcies to a Chapter 7 bankruptcy because Experian does not care to discover or determine when that conversion took place, despite that information being readily available to Experian from the public bankruptcy dockets or from the same vendors from which they obtain the bankruptcy related information that they do obtain.

83. Defendant Experian thus violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's credit file and consumer reports, and by also failing to report accurate information when it knew or should have known the information it was reporting is inaccurate, or otherwise contradicted by information known by Experian, reported to Experian, or reasonably available to Experian.

84. As a result of Experian's inaccurate reporting, Plaintiff's creditworthiness has been damaged.

85. Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, and other financial harm caused by Experian's inaccurately reporting a balance for a

debt that was discharged in bankruptcy, and otherwise failing to report that the debt was discharged in bankruptcy.

86. Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

87. Defendant Experian is a direct and proximate cause of Plaintiff's damages.

88. Therefore, Experian is liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq*.

**II. COUNT II**
**AGAINST EXPERIAN**
**Violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681i**

89. All preceding paragraphs are realleged.

90. At all times pertinent hereto, Experian was a "consumer reporting agency" ("CRA") as that term is defined by 15 U.S.C. § 1681a(c).

91. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is, in fact, inaccurate, or is unable to verify the accuracy of the disputed information, the CRA is required to delete that information from the consumer's file. *See* 15 U.S.C. § 1681i(a)(5)(A).

92. Plaintiff initiated a dispute with Experian, including via written letter mailed to Experian by Plaintiff in June 2024, requesting that they correct these specific items in her credit file that is patently inaccurate and damaging to her.

93. Specifically, in Plaintiff's June 2024 dispute letter to Experian, Plaintiff provided Experian with her personal identifying information (such as name, address, phone number date of birth and Social Security Number) and then wrote:

> Dear Experian,
>
> I filed Chapter 13 Bankruptcy in January 2020. Eventually it was converted to a Chapter 7 case in February 2022, and then I received my bankruptcy discharge the following May.
>
> All the debts that I owed before converting my case to a Chapter 7 were discharged in my bankruptcy. Please update my credit report to show that I don't owe any of the debts that were discharged. My bankruptcy case number was 20-00594.
> You can call me if you have any questions.

94. As evidenced by the USPS tracking number in Plaintiff's possessions, as well as by Experian's response to Plaintiff, Experian received this dispute letter.

95. Experian, having either conducted no investigation or failing to conduct a reasonable investigation, verified the inaccurate items on Plaintiff's credit file and continued to report that the Plaintiff owed $5,331 on her Lending Club account and another $3,416 on her Upgrade account - something that any basic investigation would have prevented, since these debts had both been plainly discharged in Plaintiff's Chapter 7 bankruptcy.

96. As a direct and proximate result of Experian's willful and/or negligent refusal to conduct a reasonable investigation as mandated by the FCRA, Plaintiff has been harmed, as explained above.

## I. **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter a judgment against Defendant for the following:

(a) Declaratory judgment that Defendant Experian violated the FCRA, 15 U.S.C. § 1681e(b);

(b) An award of actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

(c) An award of statutory damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

(d) An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C. § 1681n(a)(2),

(e) Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) and § 1681o(a)(2); and

(f) Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

## II. JURY DEMAND

Plaintiff hereby demands jury trial on all issues so triable.

Dated: February 4, 2025

By: */s/ Yitzchak Zelman*

Yitzchak Zelman, Esq.
701 Cookman Avenue, Suite 300
Asbury Park, NJ 07712
(732) 695-3282
yzelman@marcuszelman.com
Attorney for Plaintiff